IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION



FILED
FEB 23 2012
PATRICK E. DUFFY CLERK
BY_____
Deputy Clerk
U.S. DISTRICT COURT
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 08-72-BLG-RFC |
| | CV 12-05-BLG-RFC |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| RUBEN COTA-BECERRA, | |
| Defendant/Movant. | |

On January 21, 2012, Defendant/Movant Ruben Cota-Becerra ("Cota"), a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.

**I. Preliminary Screening**

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

A defendant "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). That assessment is made in light of "the record of prior proceedings." Rule 4(b), Rules Governing § 2255 Proceedings. "Because the trial judge is thoroughly familiar with the case, there is obvious administrative advantage in giving him the first opportunity to decide whether there are grounds for granting the motion." Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings. The trial judge is "not likely to be misled by false allegations as to what occurred." *Id.* (quoting *Carvell v. United States*, 173 F.2d 348-49 (4th Cir. 1949)).

## II. Background

On May 22, 2008, a grand jury indicted Cota on one count of conspiracy to distribute and possess with intent to distribute more than 500 grams of a substance containing methamphetamine, a violation of 21 U.S.C. §§ 841 and 846 (Count 1); and three counts of distribution and possession with intent to distribute various quantities of methamphetamine totaling 580.4 grams, or 496.3 grams of actual methamphetamine, violations of 21 U.S.C. §§ 2 and 841(a)(1) (Counts 2, 3, and 4). Indictment (doc. 1) at 2-3.

After three other attorneys withdrew – one because Cota "severed the attorney-client relationship," Mot. (doc. 18) – James B. Obie was appointed to represent Cota. Order (doc. 22). The United States twice filed, and twice withdrew, an Information under 21 U.S.C. § 851, which, if pursued, could have raised the mandatory minimum penalty from ten to twenty years. 21 U.S.C. §§ 841(b)(1)(A)(viii), 846, 851; Informations (docs. 11, 38); Orders (docs. 13, 44).

On June 11, 2009, Cota entered a guilty plea on all counts without a plea agreement – an "open" plea.

A presentence report was prepared. It recommended finding a drug quantity of 15 or more kilograms. It also recommended a four-level enhancement for Cota's role as an organizer and a two-level enhancement for obstruction of justice based on Gordon's report that Cota had told him he had people "inside already'" who would kill Gordon if he testified against Cota. Presentence Report ¶¶ 7-35. Arguing that the evidence was insufficient, Cota objected to the drug quantity and the enhancements. Def.'s Sentencing Mem. (doc. 52) at 2-6.

At the sentencing hearing, Bracy, Gordon, and Cota testified. Cota was held responsible for five to 15 kilograms of methamphetamine, so his base offense level was 36. He received both enhancements and, based on his own testimony at the hearing, he lost his two-point reduction for acceptance of responsibility, thus

ORDER / PAGE 3

precluding a third point as well. *See* U.S.S.G. §§ 2D1.1(c)(2), 3B1.1(a), 3C1.1, 3E1.1. His total offense level was 42. His criminal history category was II. His advisory guideline range was 360 months to life. He faced a mandatory minimum penalty of ten years. 21 U.S.C. § 841(b)(1)(A)(viii). Cota was sentenced to serve 360 months on each count, concurrent, to be followed by five years' supervised release. Minutes (doc. 54); Judgment (doc. 59) at 2-3.

Cota appealed his sentence. On October 13, 2010, the Ninth Circuit Court of Appeals affirmed. Mem. at 2-3, *United States v. Cota-Becerra*, No. 09-30338 (9th Cir. Oct. 13, 2010) (unpublished mem. disp.) (doc. 70). Cota's conviction became final on January 11, 2011. *Clay v. United States*, 537 U.S. 522, 525 (2003).

Cota timely signed his § 2255 motion and deposited it in the prison mail system on January 5, 2012. Mot. § 2255 at 8, Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

### III. Cota's Allegations and Analysis

Cota contends that he was denied his Sixth Amendment right to the effective assistance of counsel and his Fifth Amendment right to due process. He asserts that he is innocent, that his guilty plea was not knowing, voluntary, and intelligent, and that he did not provide an adequate factual basis for his plea. He claims that he either would have proceeded to trial or would have received a lesser sentence, but for

counsel's description of the venire, inadequate investigation, and failure to file pretrial motions, to negotiate an *Alford* plea, to adequately challenge the drug amounts, and to prepare him to testify at sentencing. Mot. § 2255 at 4-5. Cota also avers that the Court and the prosecution are responsible for these violations of his rights as well. *Id.* at 7-8.

Claims of ineffective assistance are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Cota must show both that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### A. Guilty Plea

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Misunderstanding, duress, and misrepresentation underlying a plea may well suffice to set it aside. *Id.* at 74-75. But Cota does not allege a basis for misunderstanding, duress, or

misrepresentation that is credible in light of the record.

**1. Coercion or Bad Advice**

Cota claims that he pled guilty "wholly against my will" because the prosecutor told Obie "the prosecutor would charge my girlfriend and any witnesses who came to court to testify on my behalf with conspiracy." Certification (doc. 72-1) at 6-7 ¶¶ 14-15. Cota also contends that, between Obie's appointment in March and the change of plea hearing on June 11, 2009, Obie traveled from his office in Helena, Montana, to see Cota in Basin, Wyoming, five or six times.[1] *Id.* at 3 ¶ 7; Order (doc. 22); Minutes (doc. 46). Obie "consistently invoked the specter of all the evidence which the Government had against me without specifically delineating what that evidence was," Certification at 4-5 ¶ 10, and recommended a guilty plea. Obie also advised Cota that, if he went to trial, he would be subject to the § 851 enhancement and he "would certainly receive a 30-year to life sentence," but, with a guilty plea, he "could expect to receive a jail sentence of 10 to 14 years." *Id.* at 6 ¶ 14.

On or about June 7, 2009, Obie presented Cota with the United States' plea offer. Cota "responded by telling attorney Obie that he was crazy, and that counsel knew that I was never apprehended or ever observed with any quantity of drugs. Attorney Obie confessed to me that he recognized this, but the terms of the

---

[1] For the record, that is a 700-mile round trip. Fed. R. Evid. 201.

[government's] plea offer were what they were." *Id.* at 7 ¶ 14. Cota rejected the plea offer but, on June 11, 2009, four days before trial, entered an open plea to all counts.

If a prosecutor coerced Cota into foregoing trial by threatening retaliatory prosecutions of his trial witnesses, certainly his plea would be involuntary. But Cota's contentions here are frivolous. First, Cota said under oath that no threats were made:

> The Court: Has anybody made any threats against you or members of your family to get you to plead guilty?
>
> Cota: No, sir.
>
> The Court: Anybody made any promises that you believe to be promises to get you to plead guilty?
>
> Cota: No.
>
> The Court: Well, you're hesitating. Has somebody, that you should tell me about?
>
> Cota: No, sir.

Change of Plea Tr. (doc. 50) at 6:21-7:4.

Second, elsewhere in his Certification, Cota says he "gave the investigator the names of up to twelve witnesses who would be willing to testify on my behalf at trial," but "the investigator informed me that he was unsuccessful in locating any of my [trial] witnesses and thus had not interviewed or obtained statements from

anyone." Certification at 5 ¶ 11. It is difficult to imagine how the alleged threat against missing witnesses could have affected Cota's decision to plead guilty.

Third, I saw Cota at the change of plea hearing, and what I saw was a wholly voluntary plea. A transcript cannot capture everything, but it is nonetheless evident on the face of the record that Cota wanted to avoid trial while also admitting as little as possible. In particular, he wanted to conceal how he moved the meth. He carefully and line-by-line distinguished between what he was and was not willing to admit. Change of Plea Tr. at 32:4-38:18. His on-the-record review of the offer of proof decimates his claim that Obie did not "specifically delineat[e] what th[e] evidence was." Certification at 4 ¶ 10. Cota said he was satisfied with Obie's services, Change of Plea Tr. at 7:5-10. This was no small point, given his rejection of his previous counsel. Cota agreed he intended to plead guilty rather than going to trial. *Id.* at 7:11-14. Despite an occasional need for clarification from a duly qualified interpreter, he plainly understood what he was doing. *E.g., id.* at 3:17-5:6 (addressing need for interpreter), 21:11-23:7 (expressing understanding "of everything ... so far," with occasional assistance of interpreter, and clarifying that he will consult with interpreter if he does not understand), 29:29:1-22 (expressing understanding of distinction between "I agree" and "I did it"), 29:23-30:25 (stating that he "did" what each count accused him of doing).

Fourth, Obie accurately advised Cota about sentencing possibilities. The Ninth Circuit holds that "gross mischaracterization of the likely outcome" at sentencing, "combined with . . . erroneous advice on the possible effects of going to trial," establishes deficient performance. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (quoting *Brady v. United States*, 397 U.S. 742, 748 & n.6 (1970)). Cota shows neither. He faced a ten-year mandatory minimum. Were it not for the enhancements Cota earned at sentencing, his advisory guideline range would have been 151-188 months, or twelve and a half to almost sixteen years. Obie's estimate of 10-14 years was reasonably accurate. Had the case gone to trial, the United States might have called more witnesses than it did at sentencing and proved a significantly higher drug quantity, so a 360-month to life range was also a reasonably accurate estimate of a sentence after trial. Obie also correctly advised Cota about the § 851 enhancement, and it was true that he would likely receive a lower sentence if he pled guilty. U.S.S.G. § 3E1.1; *cf. also Brady v. United States*, 397 U.S. 742, 754-55 (1970) (holding that plea is not rendered involuntary if it is entered to avoid the death penalty).

Fifth, the fact that Cota "was never apprehended or ever observed" with methamphetamine is not significant. Physical possession is not an element. Guilt beyond a reasonable doubt can be and frequently is established without it. *See, e.g.*,

ORDER / PAGE 9

9th Cir. Jury Instr. (Crim.) 1.8, 3.5, 3.18, 5.1, 9.13 (2003).

Finally, Cota claims Obie told him he would be convicted because the jury would consist only of white people, and they would "most assuredly" condemn Cota because of his Mexican ancestry. Certification at 4 ¶ 10, 6 ¶ 13. The lives of jurors in Billings probably are different from the lives of jurors in other jurisdictions, and life experience influences juries' assessments of the credibility of evidence presented in court. For that reason, every lawyer must advise a client about his jurors – though putting it in the terms Cota reports certainly would be unreasonable performance. Nonetheless, Cota cannot show prejudice. If he could point to some weakness in his guilty plea, the matter might be different. But there is no reasonable probability that a reasonable person in Cota's position – a person who carefully distinguished what the United States could and could not prove beyond a reasonable doubt – would have gone to trial if only counsel had not advised him as he allegedly did regarding the composition of the jury. *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985) (quoting *Strickland*, 466 U.S. at 695).

The record defeats Cota's late and internally contradictory claims that he was coerced or misadvised into giving up his right to trial.

### 2. Failure to Negotiate an *Alford* Plea and Factual Basis of Plea

A defendant has no right to enter a no-contest or *Alford* plea[2] unless the Court consents. Fed. R. Crim. P. 11(a)(1). By parsimoniously picking and choosing what he was willing to admit, Cota entered the closest thing to an *Alford* plea that I was likely to accept. Change of Plea Tr. at 32:4-38:18. The factual basis was sufficient. Cota admitted these facts:

> Seykora: Law enforcement seized the following methamphetamine from Gary Gordon *that Cota-Becerra had provided him for redistribution*:
> November 3, 2006, 177.5 grams of a mixture of methamphetamine or 144.3 grams of actual methamphetamine;
> November 21, 2006, 196.1 grams of a mixture of methamphetamine or 183.2 grams of actual methamphetamine;
> January 15, 2007, 206.8 grams of a mixture of methamphetamine or 168.8 grams of actual methamphetamine.
>
> Obie: We agree with that entire paragraph, Your Honor.
>
> The Court: Okay.
>
> Cota: (Shook head negatively.)
>
> Seykora: And the defendant agrees with that?
>
> The Court: Do you agree with that, Mr. Cota?

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding that there is no constitutional error in accepting a guilty or no-contest plea despite defendant's maintaining a clam of innocence when "a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.").

Cota: Yes, sir.

. . .

Seykora: When arrested, Cota-Becerra admitted to knowing Gary Gordon and John Bracy. A search warrant executed on Cota-Becerra's shop revealed a digital scale containing methamphetamine residue, latex gloves, and documents in Cota-Becerra's false name.

Obie: We agree with that paragraph with the exception he does not believe the digital scale contained methamphetamine residue.

The Court: Okay. Go ahead.

Seykora: The United States would call coconspirators and cooperating witnesses Gary Gordon, Sandra Kerr, John Bracy, Marty Hoppel, and others to establish the conspiracy to possess with intent to distribute and distribute methamphetamine and the possession with intent to distribute and distribution of methamphetamine from the fall of 2005 up to and including August 2007. The witnesses would also include DEA chemists, law enforcement officers that stopped Cota-Becerra . . . .

 The United States would establish that the amount of methamphetamine involved in the conspiracy was . . . over 500 grams of a mixture of methamphetamine or 50 grams of actual methamphetamine as to Count 1 and further establish the amounts of methamphetamine seized on November 3, 2006, November 21, 2006, and January 15, 2007.

Obie: We agree with that paragraph.

The Court: Is that true, Mr. Cota?

(Discussion off the record at the podium.)

Cota:       Yes, sir, I agree.

. . .

The Court:   . . . Now do you think they can prove what you agreed with beyond a reasonable doubt if the case went to trial?

(Discussion off the record at the podium.)

Cota:       I don't think they could have proved that.

(Discussion off the record at the podium.)

Cota:       Oh, I understand now. I understand now, Your Honor. Sorry. Sorry. I understand.
            Yes, sir, Your Honor.

Change of Plea Tr. at 35:25-36:15, 36:22-37:14, 38:8-17, 38:24-39:8 (emphasis added); *see also* 18 U.S.C. § 2.

The United States had strong evidence of actual guilt. The offer of proof and Cota's carefully limited endorsement of it provided a sufficient factual basis for his guilty plea.

### 3. Investigation and Pretrial Motions

Cota does not identify any pretrial motions that Obie could have filed or explain how failure to file them prejudiced him. An investigator's inability to locate witnesses identified by a defendant is no basis for going to trial or for ruling a guilty

plea involuntary.

## 4. Conclusion

All claims relating to the validity of Cota's guilty plea are denied.

## B. Sentencing

### 1. Cota's Testimony

Cota contends that he learned only five to seven minutes before the sentencing hearing that Obie would call him to testify. He asserts that Obie did not "review any specific questions which he intended to ask me" or "anticipate any questions to which I would be subject to cross-examination on." As a result, Cota says, "I was thus thoroughly unprepared to be called as a witness at my sentencing; and answered the questions posed to me truthfully and to the best of my ability." Certification at 7-8 ¶ 17.

At sentencing, Obie called Cota to show that he did not have much money, Sentencing Tr. at 50:12-53:4,[3] 64:22-65:5, that he did not "store[], weigh[] out and

---

[3] Cota testified that he lived in a double-wide trailer in Lockwood with his domestic partner and helped her with living expenses. Sentencing Tr. at 50:12-21. He told the probation officer who conducted the presentence investigation other things as well:
> Lastly, for the year prior to his incarceration, the defendant had a relationship with Crystal Kelley. Cota-Becerra claimed her name was Crystal Cain, but through research it was found that her true last name is Kelley. During the initial interview, the defendant indicated she was a "good girl" who owns her own home and works at the Lucky Lil Casino in Lockwood, Billings, Montana. However, during the subsequent interview, the defendant stated she resides in South Dakota as a bank teller. According to research, Crystal and Adam Kelley own the house in Shepherd,

distribute[] methamphetamine from []his [repair] shop," Presentence Report ¶ 7; Sentencing Tr. at 60:22-62:20, and that he did not use vehicles to hide or move methamphetamine, Sentencing Tr. at 62:21-64:20. These points were aimed against the leader/organizer enhancement; if Cota looked like a middleman, he might have avoided the four points. Cota also denied threatening Gordon, *id.* at 57:23-59:10, to counteract Gordon's testimony on the obstruction of justice enhancement.[4]

But during his direct examination, Cota twice denied selling drugs, *id.* at 57:19-20, 16:19, and once denied giving drugs to anyone, *id.* at 60:20-21. There was a recess, and when we resumed, I emphasized to Cota that he should use the interpreter's services if there was anything he did not understand. He said he would. *Id.* at 67:19-68:6. Cota was asked whether he gave methamphetamine to Gordon, and he said he did not, *id.* at 68:10-12, but he admitted delivering and distributing methamphetamine. *Id.* at 72:7-24. All I wanted to know was what he did. He refused to explain:

---

Montana [reported by Cota to be his residence, *see* Presentence Report at 3 ("Identifying Data")]. The defendant advised Crystal is willing to relocate to Mexico in order to be with him. Crystal Kane left a message for this officer claiming she was in fact the defendant's fiancé.
Presentence Report ¶ 45; *see also id.* ¶ 39.

[4] Cota says he told the investigator about a witness who would testify at sentencing that another inmate, not Cota, threatened Gordon. As with Cota's trial witnesses, the investigator could not locate this witness either. Certification at 5 ¶ 12.

Obie: Do you feel that you are guilty of somehow distributing drugs in Montana?

Cota: Yes.

. . .

Obie: And when you were somehow distributing drugs, did that involve Gary Gordon?

Cota: Yeah.

Obie: No further questions, Your Honor.

The Court: Well, then, let me ask you. How are you guilty of somehow distributing drugs? You never even saw methamphetamine. What is the "somehow" that you did that resulted in drugs getting on the street? What does "somehow" mean?

Cota: Your Honor – okay. The reason I pled guilty, okay, the reason, the reason I pled guilty, I was, I was five days ready to go to trial. Okay?

The Court: I want to know what you mean when you "somehow" are responsible for dealing methamphetamine. What does that mean? What does that mean? I don't – I mean, I didn't ask about why you pled guilty. That will be an issue, I guess, for some other time. What do you mean by, "Somehow I accept responsibility for dealing drugs?"

Cota: Oh, okay.

The Court: What does the "somehow" encompass?

Cota: Okay. I understand now, Your Honor.
 I was with Gary Gordon when he was, when he was

> distributing the drugs. I knew that he was selling it, but I
> mean, I never seen the drugs, but I was with him.
>
> The Court: Yeah. You can step down.

Sentencing Tr. at 76:12-77:16. Cota's statement that he was "with" Gordon "when he was distributing the drugs" renounced his responsibility for providing drugs to Gordon. Change of Plea Tr. at 36:1-2. Now, in his § 2255 motion, Cota says he knew Gordon "only ... from my legitimate business dealings with him," Certification at 5 ¶ 11, a further retreat from his position at sentencing, where, as he also says in his Certification, he told the truth, *id.* at 8 ¶ 17; *see also* Mot. § 2255 at 4 ¶ 12 (Cota asserts he did not commit crimes).

Before he testified, Cota swore to tell "the truth, the *whole* truth, and *nothing but* the truth." *Cf.* Sentencing Tr. at 49:15-19[5] (emphases added). Still, when I asked him point-blank what he did, Cota did not tell the whole truth as he told it at the change of plea hearing. And in the Certification accompanying his § 2255 motion, he retreats even further from his admissions at the change of plea hearing and at sentencing. When the deputy clerk warned him, Cota did not listen. There is no reason to believe he would have listened to Obie instead. This claim is denied.

### 2. Drug Quantities

---

[5] The oath itself is never transcribed, but this is it. If Cota had not agreed to it, he would not have been permitted to testify.

ORDER / PAGE 17

The writer of the presentence report calculated a drug amount of "28.683875 kilograms of methamphetamine," Presentence Report ¶ 20, for a base offense level of 38, *id.* ¶ 27. Obie objected and advocated for the quantity Cota admitted at the change of plea hearing, 580.4 grams. Def.'s Sentencing Mem. at 2-4. He specifically pointed out that "[a]side from the defendant's admissions . . . there is little factual evidence concerning his drug activities." *Id.* at 3. But at sentencing, Gordon and Bracy testified. Sentencing Tr. at 25:7-29:2, 43:19-44:2. I found the amount fell between 5 and 15 kilograms, for a base offense level of 36, *id.* at 80:16-21. There is nothing in the record, and Cota identifies nothing, indicating deficient performance or prejudice. This claim is denied.

### B. Other Claims

Cota's ineffective assistance claims fail because he does not show any violation of his rights. Therefore, his other claims also lack merit and are denied as well.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

At the change of plea hearing, Cota made a careful, line-by-line analysis of the United States' offer of proof. He stated that he believed the United States could prove to a jury beyond a reasonable doubt the points he selected. Those points were sufficient to establish his guilt of the crimes charged They are inconsistent with his current claim of innocence. Further, his conduct and statements then are fundamentally inconsistent with the claims he makes now.

Counsel was not ineffective. Cota's plea was plainly voluntary, knowing, and intelligent. He was adequately advised about the range of sentences he faced, his claim of coercion is self-contradictory, and, even if no one saw Cota in physical possession of methamphetamine, that does not mean he is innocent. A reasonable person in Cota's position would not have chosen to go to trial if only counsel had not described the jurors of the Billings Division as Cota claims his counsel did. Cota himself says the defense investigator could not locate any of the witnesses Cota identified. Cota complains that counsel should have warned him, before he testified at sentencing, that he might lose credit for acceptance of responsibility; but when I

ORDER / PAGE 19

asked Cota what he did to distribute methamphetamine, Cota simply did not tell the whole truth, despite the fact that he heard the express words of the oath administered by the clerk before he testified. None of Cota's claims has any substance in light of the record of the case. There are no open questions, and there is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Cota-Becerra's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (doc. 72) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Cota files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 12-5-BLG-RFC are terminated and shall close the civil file by entering judgment in favor of the United States and against Cota-Becerra.

DATED this 23rd day of February, 2012.

Richard F. Cebull, Chief Judge
United States District Court